IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>       Applicant,<br><br>   v.<br><br>Covington & Burling LLP,<br><br>       Respondent. | Misc. No. 1:23-mc-00002 |

**DECLARATION OF DAVID N. FAGAN IN SUPPORT OF
COVINGTON & BURLING LLP'S OPPOSITION TO SEC'S APPLICATION**

1.  I, David N. Fagan, am a partner at Covington & Burling LLP ("Covington") and a member of the District of Columbia Bar.

2.  I submit this declaration in support of Covington's opposition to the Securities and Exchange Commission's ("SEC") application for an order requiring compliance with Request No. 3(a) of its March 21, 2022, subpoena.

3.  I have personal knowledge of the following facts and would be prepared to testify to them at an evidentiary hearing.

4.  I am the co-chair of two practice groups at Covington—the Cross-Border Investment and National Security Practice and the Data Privacy and Cybersecurity Practice—and my practice has a significant focus on data privacy and cybersecurity. I regularly counsel clients on preparing for and responding to sophisticated cyberattacks on their networks and information. I have assisted clients in responding to ransomware attacks, vendor breaches, hacktivists, state-sponsored attacks affecting personal data and trade secrets, and criminal organization attacks

directed at stealing personal data, among other cybersecurity matters. I also am Covington's General Counsel for Information Security.

5. On March 2, 2021, Microsoft disclosed vulnerabilities in its Exchange Server software. *See* Microsoft Security Blog, *Hafnium Targeting Exchange Servers with 0-Day Exploits* (Mar. 2, 2021), https://tinyurl.com/3h9m4wnh. Because Covington uses Exchange Server software, and in light of these public reports, at my direction and under my supervision, Covington launched an investigation to determine whether unauthorized parties had gained access to its network.

6. On March 18, 2021, Covington's investigation discovered indicators of threat activity, and the firm, at my direction, initiated its incident response, focusing on further investigation and containment, and then on ultimate remediation and eradication of the incident. Through its investigation, Covington ultimately determined that a threat actor had been able to compromise Covington's Exchange environment.

7. Within days of discovering the cyberattack, Covington notified, and began cooperating with, the FBI as part of the firm's investigation and remediation of the cyberattack.

8. Before Covington discovered, promptly contained, and remediated the breach, the threat actor undertook a series of malicious activities, including stealing credentials and engaging in search, reconnaissance, and export activity.

9. The threat actor collected email from certain Outlook accounts and accessed folders on dedicated network drives for a small group of lawyers and advisors whose work or experience related to matters of particular policy interest to the People's Republic of China.

10. Through its own investigation and its cooperation with the FBI, Covington determined that the threat actor was most likely sponsored by the Chinese government and was

very likely engaged in an espionage campaign to gather information from Covington's lawyers about the incoming Biden Administration and policy issues of interest to China.

11. In the course of Covington's cooperation with the FBI, the FBI never asked Covington to disclose the names of any firm clients or any other confidential information, nor did Covington provide any information to the FBI regarding any of the clients whose information is being sought by the SEC.

12. The FBI expressed appreciation for Covington's assistance to the FBI regarding its efforts to investigate the cyberattack.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Executed on February 11, 2023.

_____
David N. Fagan