**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

Securities and Exchange Commission,

                              Applicant,

    v.

Covington & Burling LLP,

                              Respondent.

---

No. 1:23-mc-00002-APM,
Hon. Amit P. Mehta

**BRIEF OF 83 LAW FIRMS AS AMICI CURIAE
SUPPORTING COVINGTON & BURLING LLP**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................ii

INTERESTS OF AMICI CURIAE........................................................................................ 1

INTRODUCTION .................................................................................................................. 2

ARGUMENT .......................................................................................................................... 2

I.    Time-Honored Principles Of Attorney-Client Confidentiality Shield Client
      Identities............................................................................................................... 2

II.   The SEC Claims Broad Entitlement To Client Confidences Based On Minimal
      Justifications ........................................................................................................ 6

III.  Compelling Disclosure Of Client Identities Punishes Innocent Clients, Burdens
      Attorneys, And Undermines Cooperation With Law Enforcement................... 9

CONCLUSION...................................................................................................................... 13

Appendix: List of Amici Curiae ....................................................................................... A-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Evolution AB (publ.) v. Marra,*
No. A-3341-21, 2023 WL 350576 (N.J. Super. Ct. App. Div. 2023)......................................9

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.,*
892 F.3d 1264 (D.C. Cir. 2018) ....................................................................................7

*Hunt v. Blackburn,*
128 U.S. 464 (1888)................................................................................................2, 5

*In re Sealed Case,*
107 F.3d 46 (D.C. Cir. 1997) ....................................................................................5, 7

*Trammel v. United States,*
445 U.S. 40 (1980)......................................................................................................3

*Upjohn Co. v. United States,*
449 U.S. 383 (1981)....................................................................................................5

**Other Authorities**

D.C. Bar. Op. No. 124 ....................................................................................................3

D.C. Rules of Professional Conduct, Rule 1.6(a) ..............................................................3

Daniel M. Hawke, *SEC Data in Insider Trading Investigations*, CORPORATE
COUNSEL (Aug. 1, 2019), https://www.arnoldporter.com/-
/media/files/perspectives/publications/2019/08/sec-data-in-insider-trading-
investigations.pdf. ....................................................................................................8

Justin Henry, *Attorney-Client Confidentiality at Stake in Covington's Dispute
With SEC? White-Collar Lawyers Weigh In*, THE AMERICAN LAWYER (Jan.
13, 2023), https://www.law.com/americanlawyer/2023/01/13/attorney-client-
confidentiality-at-stake-in-covingtons-dispute-with-sec-white-collar-lawyers-
weigh-in/...................................................................................................................9

*In the Matter of Certain Cybersecurity-Related Events*, HO-14225 ............................7

Deputy Attorney General Lisa O. Monaco, Keynote Address at International
Conference on Cyber Security (July 19, 2022),
https://www.justice.gov/opa/speech/deputy-attorney-general-lisa-o-monaco-
delivers-keynote-address-international-conference. ...........................................12

Karen Painter Randall & Steven A. Kroll, *Getting Serious about Law Firm Cybersecurity*, New Jersey Lawyer (June 2016), https://sc.edu/study/colleges_schools/law/centers/cybersecurity/_docs/getting_serious_about_law_firm_cybersecurity.pdf..............................................................12

Paul R. Rice et al., 1 Attorney-Client Privilege in the United States § 1.12 (2021).....................3

Paul R. Rice et al., 1 Attorney-Client Privilege in the United States § 1:3 (2021)........................3

Press Release, The White House, *The United States, Joined by Allies and Partners, Attributes Malicious Cyber Activity and Irresponsible State Behavior to the People's Republic of China* (July 19, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/19/the-united-states-joined-by-allies-and-partners-attributes-malicious-cyber-activity-and-irresponsible-state-behavior-to-the-peoples-republic-of-china/...............................................................................................8

Aruna Viswanatha, *FBI's Christopher Wray Wants Business to Help Fight China, Cyber Threats*, Wall St. J. (Feb. 9, 2023), https://www.wsj.com/articles/christopher-wray-tries-to-thaw-fbis-frosty-relationship-with-business-11675911906 ................................................................12

FBI Director Christopher Wray, Digital Transformation: Using Innovation to Combat the Cyber Threat (March 7, 2018), https://www.fbi.gov/news/speeches/digital-transformation-using-innovation-to-combat-the-cyber-threat ............................................................................12

## INTERESTS OF AMICI CURIAE[1]

Amici include major U.S. law firms with a significant presence nationally and in the District of Columbia, and therefore have a strong interest in protecting attorney-client confidentiality and providing effective legal representation to a wide variety of clients throughout the American legal system.[2]  Collectively, the undersigned 83 amici firms have more than 50,000 attorneys, offices in nearly every state, and represent many public companies regulated by the SEC, as well as other businesses, individuals, non-profits, and governments in civil litigation, criminal defense, internal investigations, administrative compliance, complex transactions, and myriad other highly sensitive matters.  Across their various fields of practice, amici's attorneys and their clients depend on attorney-client confidentiality to maintain the kind of trusted relationships that courts have long recognized as essential to effective advocacy and the administration of justice. Amici are deeply troubled by the SEC's demand for confidential client information in this case, and the obvious broader implications of its legal arguments.  Amici thus submit this brief to highlight the compelling reasons that support ruling in Respondent's favor.

---

[1] The Court's January 24, 2023 order stated that the Court "will accept amicus curiae briefs without an accompanying motion to file."  No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of the brief.  No person other than amici curiae or their counsel made a monetary contribution to the preparation or submission of this brief.

[2] The list of amici curiae law firms is located in the appendix at the end of this brief.

## INTRODUCTION

The Securities and Exchange Commission ("SEC" or "Commission") seeks to breach one of the oldest and most inviolate principles in American law.  It does so while offering only vague speculation as to why it needs the privileged or confidential client information it has demanded. Indeed, the SEC's argument is that the government's mere curiosity, without indication of wrongdoing, entitles an administrative agency to demand the names of a law firm's clients and related information that a firm may possess.  Not only would the SEC breach well-established principles of confidentiality in the service of this fishing expedition, it would turn attorneys into witnesses against their own clients, while offering no guarantees that it will not disseminate the information to other parts of the government, the press, and the public.  This violation of confidentiality is especially troubling given that it re-victimizes the targets of a foreign nation's cyberattack—an increasingly common feature of modern life that even the most diligent businesses and governments cannot prevent.

As Respondent correctly explains, the SEC's subpoena cannot be reconciled with a lawyer's ethical obligations and the law.  Attorneys have an ethical duty not to disclose confidential client information—including the identity of a client seeking legal advice—absent client consent or a well-established exception to client privilege, confidentiality, or an attorney's fiduciary and ethical obligations.  Without consent or an exception, any attorney or law firm would be obligated to resist disclosure in circumstances like those here.  Amici write to emphasize the danger of enforcing a subpoena like the one at issue here, and urge the Court to deny the SEC's application.

## ARGUMENT

## I.    Time-Honored Principles Of Attorney-Client Confidentiality Shield Client Identities

Since the Founding, American courts have protected the "necessity" of effective legal representation "free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*,

128 U.S. 464, 470 (1888); Paul R. Rice et al., 1 Attorney-Client Privilege in the United States §§ 1:3, 1.12 n.2 (2021) (collecting early American cases). Attorneys cannot provide effective legal advice without the ability to assure clients that their secrets and confidences will be strictly maintained. As courts have long recognized, such protections are "rooted in the imperative need for confidence and trust" between lawyers and clients, and "rest[] on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation." *Trammel v. United States*, 445 U.S. 40, 51 (1980).

One aspect of attorney-client confidentiality is an attorney's ethical obligation not to reveal the identities of their clients. *See* D.C. Bar. Op. No. 124, at 207. Absent certain narrow and well-defined exceptions, attorneys may not "(1) reveal a confidence or secret of the lawyer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; [or] (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person." D.C. Rules of Professional Conduct, Rule 1.6(a). The D.C. Bar has made clear that a client's identity is a "confidence" or "secret" subject to protection, and that attorneys are strictly obligated to resist disclosure of such information absent client consent. *See* D.C. Bar. Op. No. 124, at 207. An administrative subpoena does not overcome that obligation. Covington Br. at 15-19. And while not always within formal attorney-client privilege, client identities are privileged "when sufficiently intertwined with the client's confidences." Covington Br. at 19-20. At a minimum, law firms have a strong privacy interest in client identities that cannot be overborne absent a substantial showing by the government. Covington Br. at 20-41.

Compelling reasons justify these rules: the mere fact that a person or organization has sought legal counsel is highly sensitive. In amici's experience, clients often choose not to disclose that they have engaged attorneys because disclosure of the retention of counsel has the potential

to cause a broad range of adverse consequences—revealing business plans, causing public embarrassment, triggering investigations, or prompting litigation.   Consider the following scenarios:

- A company is unsure whether its recent international business deal violated U.S. sanctions law and hires a law firm with a reputation for defending high profile sanctions cases.   The law firm then suffers a cyberattack, and the government compels it to disclose the fact of the representation.   Learning of the representation, the Treasury Department starts investigating the client for sanctions violations, the investigation is widely reported in the press, and the client loses key partnerships and customers in the fallout.

- A well-known plaintiffs'-side IP litigation firm is confidentially retained by a client that is considering suing a patent infringer.   The firm suffers a cybersecurity breach, the identity of its client is disclosed to the SEC and becomes publicly known, and the infringer infers that it is the target.   The infringer then races to court in its preferred venue and file suit first, leaving the client at a strategic disadvantage.

In either of these circumstances, compelled disclosure of the mere fact of representation can inflict serious and lasting harms on clients.   And these are not fanciful hypotheticals.   Attempts to compel disclosure of client identities are fiercely litigated.   *See* Covington Br. 17-19.

Safeguarding client confidences protects not just the clients themselves, but the very institution of legal representation.   If attorneys could be compelled to reveal client identities without their consent, clients would be less likely to seek legal counsel in the first place.   As the D.C. Circuit has explained, clients are less likely to be "forthright if their lawyers could be turned into witnesses against them or if they could be forced to disclose their conversations with their

lawyers." *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997).  Under such a threat, clients seeking legal counsel may limit what they disclose to their attorneys—making their own judgments based on what they do not want to risk being exposed.  Protecting attorney-client confidentiality thus "promote[s] broader public interests in the observance of law and administration of justice" by "encourag[ing] full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

At the same time, fear of compelled disclosure can deprive many individuals and businesses of knowledgeable legal advice, leaving them to resolve disputes, draft complex agreements, or comply with arcane laws on their own.  Such an outcome would be completely out of step with American legal traditions and the basic tenets of our adversarial system.  *See Hunt*, 128 U.S. at 470.  An attorney's ethical duty not to disclose client identities thus not only promotes "full and frank communication," *Upjohn*, 449 U.S. at 389, but is essential to maintaining the institution of meaningful legal representation.

Nor should it be ignored that the SEC's demand here ultimately goes beyond the mere identity of clients but necessarily extends to part of the substance of attorney-client communications.  The Commission's subpoena sought privileged client communications.  But even just the disclosure of *which* clients were contacted about the data breach necessarily discloses the substance of *what* Covington communicated to those clients—that is, that the clients' data was compromised.  And because the government already has extensive knowledge about the Hafnium attack, SEC Memo 2, it would be able to make further inferences about Covington's clients and their potential legal exposures if it obtained the contested information.  That is to say nothing of the damage from public disclosure—as the SEC's own subpoena makes clear, the agency shares the information it gathers with numerous other entities, governmental and otherwise, as well as

"members of Congress, the press, and the public."  Dkt. 1-2 at 33-34.  In all these ways, the SEC seeks to transform Respondent into a witness against its own clients, using the fact of the communication to interrogate whether the law firm's clients may have violated securities laws.

## II.   The SEC Claims Broad Entitlement To Client Confidences Based On Minimal Justifications

The SEC would turn these time-honored principles on their head in service of a fishing expedition.   Without evidence that any of Respondent's clients broke securities laws, the Commission seeks to compel Respondent to reveal the identities of 298 publicly traded clients.  SEC Memo 8-9.  And its true aim goes even further:  the Commission's subpoena shows that it seeks not just client names but their material non-public information as well, contained in strictly privileged attorney-client communications.   Amici are deeply troubled by the scope of this demand.

While the Commission's application to this Court now seeks only the names of Respondent's clients, SEC Memo 5, neither the agency's investigative rationale nor its legal arguments are so limited.  The SEC says it wants to know "whether the Hafnium threat actors viewed or exfiltrated [material non-public information] related to any of Covington's public company clients and, if so, for which clients."  SEC Memo 8.  But there is no indication that names alone will satisfy the SEC.  And amici are concerned that the SEC ultimately seeks to discover whether Respondent had material non-public information and what the information was.  Indeed, the SEC's initial subpoena requested client documents and "[a]ny [co]mmunications provided to the client" relating to the breach. Dkt. 1-2 at 17-18.  That request is on hold pending this litigation, but the Commission offers no assurances it will not demand that information again in the future.  And, under the Commission's sweeping legal theory, such a demand could not be refused.

The SEC acknowledges that privilege law and ethics rules protect client confidences, SEC Memo 12-14, but nonetheless claims broad entitlement to Respondent's client information because it meets the minimal requirements for enforcing an administrative subpoena.  SEC Memo 6-7.  In so doing, the Commission ignores that attorney-client privilege applies even in the face of an administrative subpoena.  *See, e.g.*, *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1269 (D.C. Cir. 2018).  And it requires a well-established and recognized exception—such as the crime-fraud rule—to overcome the privilege.  *See In re Sealed Case*, 107 F.3d at 49.  The SEC's legal theory would seemingly apply to administrative subpoenas in *any* kind of investigation by *any* agency.  Every time a law firm faces a cyberattack, the Environmental Protection Agency could subpoena client names to try to ferret out polluters, or the Office of Foreign Assets Control could trawl client names for leads on sanctions violations.  Such a theory of entitlement is effectively boundless.

Even setting aside the problems with the Commission's legal arguments, it is precisely the "low bar" to enforcement, SEC Memo 10, that amici find so troubling.  Its theory of entitlement to client confidential information is predicated solely on the validity of the subpoena itself.  In particular, the SEC appears to be looking for information about whether Respondent's clients appropriately disclosed the incident.  And this would not be the first time the SEC has investigated the victims of a cyberattack.  *See In the Matter of Certain Cybersecurity-Related Events*, HO-14225 (investigating victims of Solar-Winds cyberattack to see whether they adequately disclosed the incident).[3]  But that only confirms the problems with the Commission's demand—it seeks to

---

[3] https://www.sec.gov/enforce/certain-cybersecurity-related-events-faqs (last modified Nov. 30, 2022).

compel a law firm to act as a witness against its own clients to determine whether a securities law violation occurred.

Nor is that all the SEC seeks.  The SEC's subpoena seeks to further that inquiry by requesting strictly privileged "[c]ommunications provided to the client" relating to the breach. Dkt. 1-2 at 17-18.  And the SEC does so without pointing to specific evidence or information suggesting that Respondent's clients have traded on material non-public information as a result of the cyberattack.  The SEC's suggestion that it needs confidential client information to determine whether the Hafnium threat actors traded on material nonpublic information, SEC Memo 8, is unpersuasive, unsupported by facts, and contradicts the government's own intelligence assessments.  The SEC already has other, far less intrusive methods for detecting possible insider trading.  *See, e.g.*, Daniel M. Hawke, *SEC Data in Insider Trading Investigations*, CORPORATE COUNSEL (Aug. 1, 2019).[4]  And in any event, the White House has concluded with a "high degree of confidence" that the campaign of incidents that the SEC is investigating was conducted by Chinese state actors for espionage purposes.  Press Release, The White House, *The United States, Joined by Allies and Partners, Attributes Malicious Cyber Activity and Irresponsible State Behavior to the People's Republic of China* (July 19, 2021).[5]

Given the vital interests at stake, the SEC should have to make a significant showing that its request is based on more than mere speculation, or that it has exhausted other means of obtaining the same information before even attempting to compel attorneys to breach client confidentiality.

---

[4] https://www.arnoldporter.com/-/media/files/perspectives/publications/2019/08/sec-data-in-insider-trading-investigations.pdf.

[5] https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/19/the-united-states-joined-by-allies-and-partners-attributes-malicious-cyber-activity-and-irresponsible-state-behavior-to-the-peoples-republic-of-china/.

While protection for client identities may not be absolute, if "the entry of any [legal] order eclipse[d] a lawyer's ethical obligations" not to disclose client confidences, the rule "would have no meaning at all." *Evolution AB (publ.) v. Marra*, No. A-3341-21, 2023 WL 350576, at *3 (N.J. Super. Ct. App. Div. 2023). There might be some special situations in which an agency could validly seek client identities, but by its own account the SEC is merely acting out of "official curiosity" without evidence of wrongdoing. Dkt. 1-2, SEC Ex. C, at 3 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

Adopting the SEC's approach could invite similarly speculative requests by *any* government agency in virtually *any* speculative investigation, regardless of whether the investigating agency had any indication of wrongdoing by a law firm or its clients. Amici handle many thousands of matters each year that, under the Commission's theory, could trigger agency demands for client secrets. Allowing any agency to compel disclosure in such situations without evidence of wrongdoing would be a dramatic overreach.

## III.   Compelling Disclosure Of Client Identities Punishes Innocent Clients, Burdens Attorneys, And Undermines Cooperation With Law Enforcement

Granting the application here would not only contravene basic tenets of confidentiality, but also ultimately punishes the victims of a Chinese state-sponsored cyberattack. The Microsoft Hafnium cyberattack was perpetrated by a "a foreign actor," SEC Memo 2, not Respondent or its clients. Just as amici would have done, Respondent fully "cooperated with FBI officials who determined that the attack was sponsored by Chinese authorities targeting information relating to the incoming Biden administration." Justin Henry, *Attorney-Client Confidentiality at Stake in Covington's Dispute With SEC? White-Collar Lawyers Weigh In*, THE AMERICAN LAWYER (Jan.

13, 2023).[6]  Yet the requested compelled disclosure would harshly penalize blameless clients, back attorneys into a corner, and discourage law firms like amici from cooperating with law enforcement in the future.

Such a cavalier approach to client confidences puts both clients and attorneys in an untenable position.  For all the reasons explained above, Respondent's clients, who were innocent victims of the underlying cyberattack, would face the unfair consequences that accompany disclosure of representation.  *See supra* at 3-6.  But the onerous burden disclosure would also put on attorneys in Respondent's situation is just as problematic.

When a law firm is hacked, it must take a number of steps, all of which require a complex assessment of client interests and legal obligations.  First, it must assess what outside experts or law enforcement agencies to contact to help it determine the extent of the breach, what was accessed, and notify affected clients.  And at each of these steps, a law firm faces additional complex decisions, including whether law enforcement can help with understanding the scope of the breach or whether the threat remains ongoing.  Second, it must determine whether further cooperation with law enforcement is permissible or desirable.  And third, in the event of a subpoena, it must decide whether it is permissible or desirable to comply.  At every stage, attorneys must analyze the ethical, fiduciary, and confidentiality implications to their clients, as well as their own legal obligations and responsibilities as good citizens.  Each step in that process is already fraught with ethical complications as the firm seeks to comply or balance the possible conflict between its own legal duties to report and its obligations to zealously protect its clients' interests even to its own detriment.

---

[6] https://www.law.com/americanlawyer/2023/01/13/attorney-client-confidentiality-at-stake-in-covingtons-dispute-with-sec-white-collar-lawyers-weigh-in/.

Permitting the kind of compelled disclosure requested here vastly expands the potential harm clients may face.  And it can fundamentally change the calculus when law firms consider how to respond to a cyberattack.  Faced with the choice between complying with a subpoena and protecting clients' secrets, Respondent took the same course of action here that any one of the undersigned amici firms would have been forced to take:  it resisted disclosure to protect its clients. But underneath that straightforward conclusion lies a tangle of hard decisions.  And the SEC's approach would all too often leave attorneys with the choice of harming themselves or harming their clients.  They could either fulfill their ethical obligations to their clients, while accepting the legal sanctions that might follow their refusal to honor a subpoena.  Or they could comply with the legal order, but face bar discipline, possibly even disbarment, for revealing their clients' secrets. Either outcome imposes a significant and unfair burden on attorneys.

While differing circumstances might alter a firm's response to a subpoena for client information, an overly aggressive approach to compelling disclosure of client identities could force more firms into a defensive crouch, making them more reluctant to cooperate with government investigations and more likely to resort to litigation in resisting disclosure.  Those firms that decide not to report hacks would be denied all the benefits, services, and sophisticated cybersecurity tools that are available only through government cooperation.  And while amici, like Respondent, have the resources to litigate subpoena disputes, other attorneys may not, and might be forced to comply, thus overriding their ethical obligations and fiduciary duties.  Resisting an agency subpoena is a costly and time-consuming process, and smaller firms or solo practitioners might feel overwhelming pressure to simply disclose even if doing so harmed their clients.

Finally, enforcement of the SEC's subpoena runs counter to the government's broader cybersecurity efforts, which encourage cooperation.  Since at least 2009, the FBI, Secret Service,

and other law enforcement agencies have conducted significant outreach to law firms to gain their trust and attention in addressing cybersecurity threats.  Karen Painter Randall & Steven A. Kroll, *Getting Serious about Law Firm Cybersecurity*, New Jersey Lawyer (June 2016).[7]   Law enforcement agencies have increasingly recognized the investigative benefits of partnering with private sector victims and have devoted significant resources to working with the private sector to protect vital national assets such as corporate trade secrets from economic espionage and other cyber threats.  *See* Aruna Viswanatha, *FBI's Christopher Wray Wants Business to Help Fight China, Cyber Threats*, Wall St. J. (Feb. 9, 2023).[8]   Deputy Attorney General Lisa Monaco recently emphasized "[o]ne of the most important steps in disrupting malicious cyber activity is to increase the reporting of cybercrimes by private sector victims," and pledged to companies who cooperate with law enforcement, the Department will "stand with them in the aftermath of an incident."   Deputy Attorney General Lisa O. Monaco, Keynote Address at International Conference on Cyber Security (July 19, 2022).[9]   And FBI Director Christopher Wray publicly committed to "treat victim companies as victims."   FBI Director Christopher Wray, Digital Transformation: Using Innovation to Combat the Cyber Threat (March 7, 2018).[10]   These efforts begin to ring hollow when other government agencies seek to compel the disclosure of client

---

[7] https://sc.edu/study/colleges_schools/law/centers/cybersecurity/_docs/getting_serious_a bout_law_firm_cybersecurity.pdf.

[8] https://www.wsj.com/articles/christopher-wray-tries-to-thaw-fbis-frosty-relationship-with-business-11675911906.

[9] https://www.justice.gov/opa/speech/deputy-attorney-general-lisa-o-monaco-delivers-keynote-address-international-conference.

[10] https://www.fbi.gov/news/speeches/digital-transformation-using-innovation-to-combat-the-cyber-threat.

confidences after law firms have voluntarily disclosed cyberattacks and collaborated with law enforcement, even when not otherwise required by law.

**CONCLUSION**

The SEC's application for an order enforcing the subpoena to Respondent should be denied.

Respectfully submitted,

/s/ *Kevin J. Orsini*
KEVIN J. ORSINI
CRAVATH, SWAINE & MOORE LLP
825 8th Ave
New York, NY 10019
Tel: (212) 474-1596

*Counsel for Cravath, Swaine & Moore LLP*

/s/ *Erez Liebermann*
EREZ LIEBERMANN
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6224

*Counsel for Debevoise & Plimpton LLP*

/s/ *Alice S. Fisher*
ALICE S. FISHER (D.C. Bar No. 437492)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 637-2232

*Counsel for Latham & Watkins LLP*

/s/ *Brian R. Matsui*
BRIAN R. MATSUI (DC Bar No. 491339)
ADAM L. SORENSEN (DC Bar No. 1685695)
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel: (202) 887-8784
BMatsui@mofo.com

DOUGLAS L. HENDRICKS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-7037

*Counsel for Morrison & Foerster LLP*

/s/ *Jeffrey S. Powell*
JEFFREY S. POWELL
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 389-5050

*Counsel for Kirkland & Ellis LLP*

/s/ Martin Stern
MARTIN STERN (DC Bar No. 434330)
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Tel: (504) 585-0289

*Counsel for Adams and Reese LLP*

/s/ John C. Massaro
JOHN C. MASSARO (DC Bar. 441194)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942 5122

*Counsel for Arnold & Porter Kaye Scholer LLP*

/s/ Julia Guttman
JULIA GUTTMAN (DC Bar No. 412912)
BAKER BOTTS LLP
700 K Street, NW
Washington, DC 20001
Tel: (202) 639-7706

*Counsel for Baker Botts LLP*

/s/ Peter J. Engstrom
PETER J. ENGSTROM
BAKER & MCKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
Tel: (415) 576-3025

*Counsel for Baker & McKenzie LLP*

/s/ William Slaughter
WILLIAM SLAUGHTER
BALLARD SPAHR
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8114

*Counsel for Ballard Spahr LLP*

/s/ Joel Bertocchi
JOEL BERTOCCHI
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel: (312) 634-5700

*Counsel for Akerman LLP*

/s/ Mike Glazer
MIKE GLAZER
AUSLEY & MCMULLEN
123 South Calhoun Street
Tallahassee, FL 32301
Tel: (850) 425-5474

*Counsel for Ausley & McMullen LLP*

/s/ Sam Berry Blair
SAM BERRY BLAIR
BAKER DONELSON BEARMAN CALDWELL
& BERKOWITZ, PC
165 Madison Ave. Suite #2000
Memphis, TN 38103
Tel.: (901) 577-2257

/s/ John S. Hicks
JOHN S. HICKS
BAKER DONELSON BEARMAN CALDWELL
& BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Tel.: (615) 726-5600

*Counsel for Baker Donelson Bearman
Caldwell & Berkowitz, PC*

/s/ Dave Boyd
DAVE BOYD
BALCH & BINGHAM
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Tel: (205) 226-3485

*Counsel for Balch & Bingham LLP*

/s/ *Joel S. Miliband*
JOEL S. MILIBAND
BROWN RUDNICK LLP
2211 Michelson Drive, Seventh Floor
Irvine, CA 92612
Tel: (949) 752-7100

*Counsel for Brown Rudnick LLP*

/s/ *David Kitner*
DAVID KITNER
JADD MASSO
CLARK HILL, P.C.
901 Main Street
Dallas, Texas 75202
Tel: (214) 651-4618

*Counsel for Clark Hill, P.C.*

/s/ *H. Robert Fiebach*
H. ROBERT FIEBACH
COZEN O'CONNOR
One Liberty Place, 1650 Market Street Suite 2800
Philadelphia, PA 19103
Tel.: (215) 665-4166

*Counsel for Cozen O'Connor*

/s/ *Benjamin E. Rosenberg*
BENJAMIN E. ROSENBERG
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3622

*Counsel for Dechert LLP*

/s/ *David S. Roth*
DAVID S. ROTH
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Tel.: (205) 521-8428

*Counsel for Bradley Arant Boult*
*Cummings LLP*

/s/ *James P. Wehner*
JAMES P. WEHNER (DC Bar No. 454823)
CAPLIN & DRYSDALE
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000

*Counsel for Caplin & Drysdale LLP*

/s/ *John R. Gerstein*
JOHN R. GERSTEIN (DC Bar No. 913228)
CLYDE & CO US LLP
1775 Pennsylvania Avenue NW
Suite 400
Washington, DC 20006
Tel: (202) 747-5101

*Counsel for Clyde & Co US LLP*

/s/ *Timila S. Rother*
TIMILA S. ROTHER
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Avenue, Suite 100
Oklahoma City, OK 73102
Tel.: (405) 235-7757

*Counsel for Crowe & Dunlevy, P.C.*

/s/ Elisha King

ELISHA KING (DC Bar No. 482026)
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel.: (202) 799-4254

*Counsel for DLA Piper LLP (US)*

/s/ Michael Silverman

MICHAEL SILVERMAN
DUANE MORRIS
190 South LaSalle Street, Suite 3700
Chicago, IL 60603
Tel: (312) 499-6707

*Counsel for Duane Morris LLP*

/s/ Kathryn J. Fritz

KATHRYN J. FRITZ, ESQ.
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Tel: (415) 875-2300

*Counsel for Fenwick & West LLP*

/s/ Ron Minkoff

RON MINKOFF
FRANKFURT KURNIT P.C.
28 Liberty Street
New York, NY 10005
Tel: (212) 705-4837

*Counsel for Frankfurt Kurnit P.C.*

/s/ William R. Hanlon

WILLIAM R. HANLON (DC Bar No. 351213)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel: (202) 346-4239

*Counsel for Goodwin Procter LLP*

/s/ Edward J. Reich

EDWARD J. REICH
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-6989

*Counsel for Dentons US LLP*

/s/ Peter M. Lancaster

PETER M. LANCASTER
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel.: (612) 340-7811

*Counsel for Dorsey & Whitney LLP*

/s/ Brian Moore

BRIAN MOORE
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48306
Tel: (248) 203-0772

*Counsel for Dykema Gossett PLLC*

/s/ Roger D. Feldman

ROGER D. FELDMAN
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel.: (617) 956-5924

*Counsel for Fish & Richardson P.C.*

/s/ Frederic Klein

FREDERIC KLEIN
GOLDBERG KOHN LLP
55 East Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 201-3908

*Counsel for Goldberg Kohn LLP*

/s/ Alan Naar
ALAN NAAR
GREENBAUM, ROWE, SMITH & DAVIS LLP
P.O. Box 5600
Woodbridge, NJ 07095
Tel: (732) 476-2530

*Counsel for Greenbaum, Rowe, Smith & Davis LLP*

/s/ Stacy Brainin
STACY BRAININ
HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5584

*Counsel for Haynes and Boone LLP*

/s/ Margaret Hedges
MARGARET HEDGES (DC Bar No. 467379)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel: (202) 637-5600

*Counsel for Hogan Lovells US LLP*

/s/ Greg Waller
GREG WALLER
HUNTON ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, TX  77002
Tel.: (713) 220-4790

*Counsel for Hunton Andrews Kurth LLP*

/s/ Richard Rosensweig
RICHARD ROSENSWEIG
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Tel: (617) 574-3588

*Counsel for Goulston & Storrs PC*

/s/ Dave Utykanski
DAVE UTYKANSKI
HARNESS, DICKEY, & PIERCE LLP
5445 Corporate Dr., Suite 200
Troy, MI 48098
Tel: (248) 641-1600

*Counsel for Harness, Dickey, & Pierce LLP*

/s/ Brett Preston
BRETT PRESTON
HILL WARD LLP
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602
Tel: (813) 221-3900

*Counsel for Hill Ward LLP*

/s/ Mark Stern
MARK STERN
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7568

*Counsel for Honigman LLP*

/s/ *Kevyn D. Orr*

KEVYN D. ORR (DC Bar No. 384208)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel. (202) 879-5560

*Counsel for Jones Day*

/s/ *Dana Rosenfeld*

DANA ROSENFELD (DC Bar No. 416514)
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC 20007
Tel.: (202) 342-8588

*Counsel for Kelley Drye & Warren LLP*

/s/ *M. Robert Thornton*

M. ROBERT THORNTON
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-4778

*Counsel for King & Spalding LLP*

/s/ *Lawrence A. Kasten*

LAWRENCE A. KASTEN
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 E. Washington Street, Suite 1200
Phoenix, AZ 85004
Tel: (602) 262-0228

*Counsel for Lewis Roca Rothgerber Christie LLP*

/s/ *Robert R. Stauffer*

ROBERT R. STAUFFER
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 923-2905

*Counsel for Jenner & Block LLP*

/s/ *Jan Nielsen Little*

JAN NIELSEN LITTLE
STEVEN RAGLAND
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400

*Counsel for Keker, Van Nest & Peters LLP*

/s/ *Susan M. Spaeth*

SUSAN M. SPAETH (DC Bar No. 431407)
KILPATRICK TOWNSEND & STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA 94025
Tel: (650) 324-6335

*Counsel for Kilpatrick Townsend & Stockton LLP*

/s/ *Jeffrey B. Maletta*

JEFFREY B. MALETTA (DC Bar No. 294009)
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006
Tel: (202) 778-9062

*Counsel for K&L Gates LLP*

/s/ *David M. Wissert*

DAVID M. WISSERT
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
Tel. (646) 414-6912

*Counsel for Lowenstein Sandler LLP*

/s/ *Jim DeAngelo*

JIM DEANGELO
MCNEES WALLACE & NURICK LLC
100 Pine Street
Harrisburg, PA 17101
Tel: (717) 237-5470

*Counsel for McNees Wallace & Nurick LLC*

/s/ *Neil J Wertlieb*

NEIL J WERTLIEB (DC Bar No. 985308)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Tel: (424) 386-4410

*Counsel for Milbank LLP*

/s/ *Martin S. Checov*

MARTIN S. CHECOV
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Tel: (415) 984-8713

*Counsel for O'Melveny & Myers LLP*

/s/ *W. Allan Edmiston*

W. ALLAN EDMISTON
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Tel.: (310) 282-2241

*Counsel for Loeb & Loeb LLP*

/s/ *Malaika Eaton*

MALAIKA EATON
MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, WA 98101
Tel: (206) 467-1816

*Counsel for McNaul Ebel PLLC*

/s/ *Brent E. Routman*

BRENT E. ROUTMAN
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN 5540
Tel: (612) 336-4619

*Counsel for Merchant & Gould P.C.*

/s/ *Nelson Apjohn*

NELSON APJOHN
NUTTER MCCLENNEN & FISH LLP
Seaport West, 155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 439-2246

*Counsel for Nutter McClennen & Fish LLP*

/s/ Mark Pollack

MARK POLLACK
PAUL HASTINGS LLP
71 S. Wacker Drive, Forty-Fifth Floor
Chicago, IL 60606
Tel.: (312) 499-6050

*Counsel for Paul Hastings LLP*

/s/ Bates McIntyre Larson

BATES MCINTYRE LARSON
PERKINS COIE LLP
110 N. Wacker Drive, Suite 3400
Chicago, IL 60606
Tel.: (312) 324-8640

*Counsel for Perkins Coie LLP*

/s/ Matthew MacLean

MATTHEW MACLEAN (D.C. Bar No. 479257)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
Tel.: (202) 663-8000

/s/ David Oliwenstein

DAVID OLIWENSTEIN
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Tel.: (212) 858-1000

*Counsel for Pillsbury Winthrop Shaw Pittman LLP*

/s/ Frederick B. Warder III

FREDERICK B. WARDER III
(DC BAR NO. 434349)
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000

*Counsel for Patterson Belknap Webb & Tyler LLP*

/s/ Bruce Birenboim

BRUCE BIRENBOIM, ESQ.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3165

*Counsel for Paul, Weiss, Rifkind, Wharton & Garrison LLP*

/s/ Jennifer Gimler Brady

JENNIFER GIMLER BRADY
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19801
Tel.: (302) 984-6042

*Counsel for Potter Anderson & Corroon LLP*

/s/ Bradford Babbit
BRADFORD BABBIT
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8209

*Counsel for Robinson & Cole LLP*

/s/ Harry S. Davis
HARRY S. DAVIS
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 756-2222

*Counsel for Schulte Roth & Zabel LLP*

/s/ Mark D. Lanpher
MARK D. LANPHER (DC Bar No. 1014490)
SHEARMAN & STERLING LLP
401 9th Street, NW
Washington, DC 20004
Tel.: (202) 508-8120

*Counsel for Shearman & Sterling LLP*

/s/ Jonathan Cohen
JONATHAN COHEN
SHUTTS & BOWEN LLP
200 South Biscayne Blvd. Ste. 4100
Miami, FL 33131
Tel: (305) 379-9193

*Counsel for Shutts & Bowen LLP*

/s/ Edward H. Wasmuth, Jr.
EDWARD H. WASMUTH, JR.
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree St., NE, Suite 1000
Atlanta, GA 30309
Tel: (404) 815-3500

*Counsel for Smith, Gambrell & Russell, LLP*

/s/ Keith Whitson
KEITH WHITSON
SCHNADER HARRISON SEGAL & LEWIS
LLP
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222
Tel: (412) 577-5200

*Counsel for Schnader Harrison Segal & Lewis LLP*

/s/ Lori L. Roeser
LORI L. ROESER
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Tel: (312) 460-5258

*Counsel for Seyfarth Shaw LLP*

/s/ Gene Voigts
GENE VOIGTS
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550

*Counsel for Shook, Hardy & Bacon LLP*

/s/ Lawrence S. Spiegel
LAWRENCE S. SPIEGEL
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-4155

*Counsel for Skadden, Arps, Slate, Meagher & Flom LLP*

/s/ *Andy Lester*
ANDY LESTER
SPENCER FANE LLP
9400 Broadway Extension Suite 600
Oklahoma City, OK 73114
Tel: (405) 844-9900

*Counsel for Spencer Fane LLP*

/s/ *Bradley Tellam*
BRADLEY TELLAM
STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, OR  97205
Tel: (503) 294-9414

*Counsel for Stoel Rives LLP*

/s/ *John C. Wander*
JOHN C. WANDER
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: (214) 220-7878

*Counsel for Vinson & Elkins LLP*

/s/ *Bob Webner*
BOB WEBNER
VORYS, SATER, SEYMOUR & PEASE, LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-8243

*Counsel for Vorys, Sater, Seymour and Pease,
LLP*

/s/ *Matthew Feeney*
MATTHEW FEENEY
SNELL & WILMER LLP
One East Washington Street
Phoenix, AZ 85004
Tel: (602) 382-6239

*Counsel for Snell & Wilmer LLP*

/s/ *Stacy D. Ballin*
STACY D. BALLIN
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Square
Cleveland, OH 44114
Tel.: (216) 479-8523

*Counsel for Squire Patton Boggs (US)
LLP*

/s/ *Thomas Feher*
THOMAS FEHER (DC Bar No. 985161)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Tel: (216) 566-5532

*Counsel for Thompson Hine LLP*

/s/ *David Jargiello*
DAVID JARGIELLO
VLP LAW GROUP
635 Bryant Street, Suite #6
Palo Alto, CA 94301
Tel: (650) 472-3994

*Counsel for VLP Law Group*

/s/ *Margaret A. Keeley*
MARGARET A. KEELEY (DC Bar No. 454962)
WILLIAMS & CONNOLLY LLP
600 Maine Avenue SW
Washington, DC 20024
Tel. (202) 434-5137

*Counsel for Williams & Connolly LLP*

/s/ *David Rogers*
DAVID ROGERS (D.C. Bar No. 435269)
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Tel.: (202) 282-5885

*Counsel for Winston & Strawn LLP*

/s/ *Brendan Begley*
BRENDAN BEGLEY
JAMES KACHMAR
WEINTRAUB TOBIN LLP
400 Capitol Mall 11th Floor
Sacramento, CA 95818
Tel: (916) 558-6000

*Counsel for Weintraub Tobin LLP*

/s/ *Michael J Gottlieb*
MICHAEL J GOTTLIEB (DC Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC  20006
Tel.: (202) 303-1442

*Counsel for Willkie Farr & Gallagher LLP*

## APPENDIX: LIST OF AMICI CURIAE

1.     Morrison & Foerster LLP
2.     Cravath, Swaine & Moore LLP
3.     Debevoise & Plimpton LLP
4.     Kirkland & Ellis LLP
5.     Latham and Watkins LLP
6.     Adams and Reese LLP
7.     Akerman LLP
8.     Arnold & Porter Kaye Scholer LLP
9.     Ausley & McMullen
10.     Baker Botts LLP
11.     Baker Donelson Bearman Caldwell & Berkowitz, PC
12.     Baker & McKenzie LLP
13.     Balch & Bingham LLP
14.     Ballard Spahr LLP
15.     Bradley Arant Boult Cummings LLP
16.     Brown Rudnick LLP
17.     Caplin & Drysdale LLP
18.     Clark Hill P.C.
19.     Clyde & Co US LLP
20.     Cozen O'Connor
21.     Crowe & Dunlevy, P.C.
22.     Dechert LLP
23.     Dentons US LLP
24.     DLA Piper LLP (US)
25.     Dorsey & Whitney LLP
26.     Duane Morris LLP
27.     Dykema Gossett PLLC
28.     Fenwick & West LLP
29.     Fish & Richardson P.C.
30.     Frankfurt Kurnit P.C.
31.     Goldberg Kohn LLP
32.     Goodwin Procter LLP
33.     Goulston & Storrs PC
34.     Greenbaum, Rowe, Smith, & Davis LLP
35.     Harness, Dickey, & Pierce LLP
36.     Haynes and Boone LLP
37.     Hill Ward LLP
38.     Hogan Lovells US LLP
39.     Honigman LLP
40.     Hunton Andrews Kurth LLP
41.     Jenner & Block LLP
42.     Jones Day
43.     Keker, Van Nest & Peters LLP
44.     Kelley Drye & Warren LLP
45.     Kilpatrick Townsend & Stockton LLP

46.  King & Spalding LLP
47.  K&L Gates LLP
48.  Lewis Roca LLP
49.  Loeb & Loeb LLP
50.  Lowenstein Sandler LLP
51.  McNaul Ebel PLLC
52.  McNees Wallace & Nurick LLC
53.  Merchant & Gould P.C.
54.  Milbank LLP
55.  Nutter McClennen & Fish LLP
56.  O'Melveny & Myers LLP
57.  Patterson Belknap LLP
58.  Paul Hastings LLP
59.  Paul, Weiss, Rifkind, Wharton & Garrison LLP
60.  Perkins Coie LLP
61.  Pillsbury Winthrop Shaw Pittman LLP
62.  Potter Anderson & Corroon LLP
63.  Robinson & Cole LLP
64.  Schnader Harrison Segal & Lewis LLP
65.  Schulte Roth & Zabel LLP
66.  Seyfarth Shaw LLP
67.  Shearman & Sterling LLP
68.  Shook, Hardy & Bacon LLP
69.  Shutts & Bowen LLP
70.  Skadden, Arps, Slate, Meagher & Flom LLP
71.  Smith Gambrell LLP
72.  Snell & Wilmer LLP
73.  Spencer Fane LLP
74.  Squire Patton Boggs (US) LLP
75.  Stoel Rives LLP
76.  Thompson Hine LLP
77.  Vinson & Elkins LLP
78.  VLP Law Group LLP
79.  Vorys, Sater, Seymour and Pease LLP
80.  Weintraub Tobin LLP
81.  Williams & Connolly LLP
82.  Willkie Farr & Gallagher LLP
83.  Winston & Strawn LLP

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Local Rule 7(o)(4) because it does not exceed 25 pages.

This brief complies with the typeface requirements of Local Rule 5.1(d) because this brief has been prepared in a proportionally-spaced typeface using the Microsoft Office Word 2022 Word processing software in a 12-point Times New Roman type style.


Dated: February 21, 2023

/s/ *Brian R. Matsui*
BRIAN R. MATSUI (DC Bar No. 491339)
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel: (202) 887-8784
BMatsui@mofo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I filed this Brief with the United States

District Court for the District of Columbia using the CM/ECF system, which will cause it to be

served on all counsel of record.

Dated: February 21, 2023                    Respectfully submitted,


/s/ *Brian R. Matsui*
BRIAN R. MATSUI (DC Bar No. 491339)
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel: (202) 887-8784
BMatsui@mofo.com