

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

May 16, 2023

**BY ECF**

Hon. Amit P. Mehta
United States District Judge
United States District Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

      Re:    <u>SEC v. Covington & Burling LLP</u>, Case No. 23-MC-00002-APM

Dear Judge Mehta,

      We represent Applicant United States Securities and Exchange Commission ("SEC" or "Commission") in the above-referenced matter. We write regarding the Notice of Supplemental Authority filed by Respondent Covington & Burling LLP ("Covington") on May 12, 2023, at ECF 38 ("Notice"). The Notice appears to contravene the Court's instructions from the May 10, 2023, hearing in this matter. We also write to update the Court on the status of settlement talks that the Court stated should take place.

<u>Issues Concerning Covington's Notice</u>

      At the hearing, counsel for Covington offered to provide "a nonargumentative list" of cases concerning limitations on the grand jury's ability to subpoena evidence. Tr. 49:22-23. The Court granted the request, stating: "I'm happy to receive additional case citations based upon my questions … in fact, it would be helpful." Tr. 55:11-13. Counsel for Covington then asked if the citations could include "just a brief quote or statement about [the case's] relevance." Tr. 56:3-5 ("Is it okay if we do it sort of like a 28(j) letter on appeal? We'll put the case and then just a brief quote or statement about its relevance."). The Court granted this request as well. Tr. 56:6.

      The Commission complied with the Court's directive by simply identifying cases involving grand jury subpoenas, with "just a brief quote or statement" about the relevance of each grand jury case. *See* ECF 37. We were surprised to see that Covington's Notice did not include a list of the requested cases, instead presenting extended argument in two separately numbered sections.

The Commission might have let the submission pass without comment, but the substance of the document raises concerns beyond not having an equal opportunity to present the Commission's arguments. For example, Covington cites to and quotes from a treatise for the proposition that "[t]o be reasonable in its inception, 'a subpoena must be based not upon probable cause but upon individualized suspicion'; to be reasonable in scope, it must be limited 'to the least possible intrusion needed to obtain the evidence it seeks.'" Notice at 2 (quoting 1 Brenner & Shaw, *Federal Grand Jury* § 11.48). Covington neglects to inform the Court that the quoted passage concerns a grand jury's collection of "physiological evidence" from an <u>individual</u>, such as the drawing of blood. Covington omits the full quote from the treatise, including the line from the treatise stating that "individualized suspicion guarantees that the grand jury will not recklessly require an individual to undergo an uncomfortable and even dangerous procedure."[1]

Covington's omission is no inconsequential matter. This subpoena enforcement proceeding does not concern an individual's privacy interest, let alone the drawing of blood from an individual. The proceeding concerns only a request for the <u>identities</u> of <u>public companies and entities regulated by the Commission</u> that had their files accessed in the Hafnium cyberattack, and therefore may have had their material non-public information compromised. The Supreme Court has long recognized that such public companies and regulated entities do not stand on the same constitutional footing as individuals. *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (explaining that the "basic purpose" of the Fourth Amendment is "to safeguard the privacy and security of <u>individuals</u> against arbitrary invasions by governmental officials") (emphasis added; quotation marks and citation omitted); *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy.") (citations omitted). The privacy interests at stake here have less weight than the privacy interests at issue in myriad other cases in which agencies and grand juries have successfully subpoenaed client lists from law firms and legal services providers.

Covington's argument for a balancing test fares no better. For example, the Supreme Court precedents cited by Covington concern physical "special needs" searches, made without any opportunity for precompliance judicial review, not administrative subpoenas where (1) the subpoena recipient may obtain judicial review as a check on arbitrary governmental action, and (2) the Supreme Court already has performed the

---

[1] Covington also cites *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1302 (4th Cir. 1987), and *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), for the proposition that grand jury subpoenas require individualized suspicion. Covington neglects to alert the Court that the language it quotes from *In re Grand Jury Subpoena: Subpoena Duces Tecum* is no longer good law in light of *United States v. R. Enterprises, Inc*. 498 U.S. 292, 296 (1991) (rejecting standard set forth in *United States v. Nixon*, 418 U.S. 683 (1974) in the context of grand jury subpoenas). And Covington fails to note that the Supreme Court in *Skinner* authorized searches of individuals without any individualized suspicion.

Fourth Amendment balancing test.  *Cf. McLane Co., Inc. v. EEOC*, 581 U.S. 72, 84 (2017) ("To be sure, we have described a subpoena as a 'constructive search' and implied that the Fourth Amendment is the source of the requirement that a subpoena not be 'too indefinite.'  But not every decision that touches on the Fourth Amendment is subject to searching review.  Subpoenas in a wide variety of other contexts also implicate the privacy interests protected by the Fourth Amendment, but courts routinely review the enforcement of such subpoenas for abuse of discretion.") (citations omitted).

  The Commission is prepared to provide any further submission that may be helpful to the Court.

Status of Settlement Talks

  Separately, the Commission further has considered the Court's comments that the parties should attempt to find a compromise, as well as the Court's question about a protective order.  The Commission followed the Court's suggestions to explore a compromise by reaching out to Covington after the May 10 hearing, to reiterate the Commission's willingness to provide confidentiality above and beyond its normal process, and to propose that the parties negotiate a protective order.[2]  The Commission sought an answer by today.  Covington has not yet responded to the Commission's proposal.

                Respectfully submitted,

                Eugene N. Hansen
                Trial Counsel
                U.S. Securities and Exchange Commission
                100 F St. NE
                Washington, DC 20549
                Tel: (202) 551-6091
                hansene@sec.gov

cc:  All counsel (by ECF)

---

[2] As the Court is aware, ahead of commencing this action, the Commission made significant efforts at compromise, including making multiple offers to Covington over the course of several months and limiting the subpoena request to just the identification of the impacted public companies and regulated entities.  *See* ECF 1-2 at ¶¶ 9-17 (Declaration of W. Bradley Ney in Support of an Application for an Order to Show Cause and for an Order Compelling Compliance with Subpoena).